### In re MIDLAND MOTOR CO.

### HERSCHELL–SPILLMAN CO. v. McCULLOCH.

(Circuit Court of Appeals, Seventh Circuit. May 20, 1915.)

No. 2179.

1. SALES ☞121—RESCISSION FOR FRAUD—WAIVER OF RIGHT TO RESCIND.
    Claimant was induced to sell property to the bankrupt by a fraudulent misrepresentation of its financial condition, and subsequently it received notes for the amount due without knowledge of the fraud. On learning of the bankruptcy, its president commenced an investigation, and in the course of the investigation presented one of the notes, which was not then due, at the bank where it was payable. *Held*, that this was not such a waiver of the fraud or reliance on the contractual obligation as prevented claimant from retaking the property.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 296–301; Dec. Dig. ☞121.]

2. BANKRUPTCY ☞116—RECLAMATION OF PROPERTY—ELECTION OF REMEDIES.
    Claimant was a creditor of a bankrupt on open account for nearly $500, and also had a right to retake certain property, the sale of which was induced by fraud. Its attorney signed its name to a petition to set aside an order of sale, claimant being described as a creditor for $10,000. *Held*, that this did not prevent claimant from reclaiming the property, the error as to the amount of its claim not having been relied upon or acted upon by any one, and, moreover, as the owner of property obtained by fraud, it had an even better standing than a creditor to have the sale set aside, and the allegation that it was creditor, instead of a defrauded vendor, was immaterial.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞116.]

3. BANKRUPTCY ☞116—RECLAMATION OF PROPERTY—ELECTION OF REMEDIES.
    An attorney, directed by a seller of goods to a bankrupt to reclaim such goods, had no authority to sign its name as a creditor to a petition to

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

set aside an order of sale, and his act in so doing was not an election by the seller to prove its claim as a creditor, since the acts of an attorney beyond the scope of his authority are without effect upon the client, except so far as the court or third parties, relying upon the apparent or presumptive authority, may have acted thereon.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞116.]

**4.** BANKRUPTCY ☞116—RESCISSION FOR FRAUD—CONDITIONS—RESTORATION OF PAYMENTS.

The claimant was induced by fraud to sell to the bankrupt motors on which $1,460 of the purchase price had been paid, and it sought to reclaim from the trustee in bankruptcy the motors in the trustee's possession. A number of them had been sold by the bankrupt, and the proceeds of those sold exceeded the payment by the bankrupt. *Held*, that the return of this payment was not a condition to the reclamation of the motors, though it was too late for the claimant to file a claim to the proceeds of the motors sold, and hence, where the motors on hand were by stipulation sold by the receiver in bankruptcy, the $1,460 could not be deducted from the proceeds of such sale in paying such proceeds to the claimant.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞116.

Misrepresentation and concealment by vendee of goods as to financial condition as affecting validity of contract of sale, see note to William Openhym & Sons v. Blake, 87 C. C. A. 126.]

**5.** BANKRUPTCY ☞140—CLAIMS—SALES INDUCED BY FRAUD.

Where motors, which the claimant was induced by fraud to sell to the bankrupt, had been resold by the bankrupt, the claimant was entitled to the proceeds thereof, if it could trace them, and, if not, it was a general creditor therefor, not under its contract, but on the quasi contractual obligation arising from the fraudulent misappropriation of its property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ☞140.]

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois; J. Otis Humphrey, Judge.

In the matter of Midland Motor Co., bankrupt; Edward D. McCulloch, trustee. From an order denying a petition by the Herschell-Spillman Company for the reclamation of certain property, the petitioner appeals. Reversed and remanded, with directions.

Appellant, a manufacturer of motors in New York, was induced, by a most glaringly fraudulent misrepresentation of the financial condition of the bankrupt as of November 30, 1912, to enter into an agreement in January, 1913, for the sale to the bankrupt of 200 motors, payments to be made on the 10th, 20th, and 30th of each month for all motors shipped up to those dates. Thirty-three motors delivered in April, 1913, the purchase price of which was $11,109, were not paid for, except to the extent of $1,460. While appellant's suspicions as to the financial standing of the bankrupt had been aroused in March, 1913, through a notification from Dun & Co. that its rating had been taken away, the bankrupt removed these suspicions by an additional statement as of February 28, 1913, showing an even better condition than in November, and various letters which reasonably satisfied appellant that the mercantile agency was wrong. In May, 1913, appellant dunned the bankrupt hard for payment of the overdue account, and finally, through its salesman, accepted notes, dated May 23, 1913, payable in 10 and 20 days, for the $9,649 balance on the April shipments and $479.57 due on the open account. At the time the notes were accepted, the bankrupt was a going concern, and appellant claims to have relied upon the correctness of the former financial statements, believing them to be true.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

224 F.—24

About May 27th appellant received word that the motor company was in trouble. On May 28th petition in bankruptcy was filed and appellant was notified. Its president and its attorney spent May 29th, 30th, and 31st at Moline, Ill., investigating the condition, and discovered the real situation. During this investigation one of the notes, though not yet due according to its terms, was presented at the bank where it was payable. On June 9th the Midland Company was adjudicated a bankrupt and the present trustee was appointed receiver. The attorney took the notes back with him to New York, and on June 21st sent them, together with the claim, to Meese, a local attorney, after having wired him that they wanted to rescind the credit and reclaim the motors on hand, and asking whether he could handle the matter. In sending him the notes, the New York attorney wrote that, in his judgment, the filing of a claim thereon would be a waiver of the right to recover back the motors, and expressly stated that, while he thought a claim could be filed for unliquidated damages, he wanted to get back such of the motors as were on hand, and that the claim for damages would be a later consideration.

On June 24th a petition, signed by various attorneys representing a number of creditors, was presented to the District Judge, asking that an order of sale theretofore entered be set aside. Appellant's name was signed to this petition by Meese, as its attorney. He appeared at the hearing as attorney for other creditors and stated: "But I also represent the Herschell-Spillman Company. We have not made up our minds just exactly what we are going to do yet." The motion of the creditors was denied. The following month the notes were tendered to the receiver and the reclamation petition filed. By stipulation the motors on hand were sold, and it was agreed that, in the event of the recovery by the petitioner, the proceeds should be accounted for at the rate of $200 per motor. Of the 33 motors unpaid for, 19 were on hand.

The special master found that at the time petitioner took the notes, on May 23, 1913, it did not know of the falsity of the statements; that the appearance of Meese before the District Judge and his joining in the petition did not constitute an election or waiver of the right to reclaim; that the presentation of one of the notes to the bank was made merely in the course of investigation, and that full knowledge of the condition of the bankrupt was not acquired until May 31st or June 1st; that the reclamation petition was filed in due time, and that under the stipulation there was due the petitioner $3,800; that as against this, however, there was to be deducted $1,460 paid on account. The petitioner excepted to the deduction; the trustee, to the other findings. The District Judge found that the petitioner had acquired knowledge of the fraud in May, 1913, that taking the notes was a waiver of the fraud, and that the several acts of the petitioner showed that it regarded itself as a creditor of the bankrupt.

Norman D. Fish, of North Tonawanda, N. Y., for appellant.
Ira J. Covey, of Peoria, Ill., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

MACK, Circuit Judge (after stating the facts as above). The gross fraud is conceded; the resulting right to reclaim unpaid-for goods found in the possession of the receiver, unless waived, is not contested. The several acts relied upon as creating a waiver of the fraud and an election to ratify the sales are the acceptance of the notes with knowledge of the fraud, the presentation of one of them for payment after the entire fraud had been disclosed, and the appearance of the vendor in the bankruptcy proceedings as a creditor, through the action of Meese in signing its name as a $10,000 creditor to a petition to set aside an order for the sale of the property in the receiver's possession.

The first two acts raise questions of facts, the last a question of law. All were resolved against the trustee by the special master before whom

the testimony was taken. Not only are we unable to say that the evidence fails to support his conclusions of fact; a careful consideration thereof has led us to the same results. The verbal testimony that a knowledge of the fraud was not acquired until after the petition in bankruptcy had been filed is supported by the documentary evidence and the surrounding circumstances. While demands for the payment of the overdue account were incessant in the first half of May, they give no hint of any knowledge of the fraud; on the contrary, petitioner expressly stated its belief that the delay was due more to "a lack of attention than lack of funds." And when the notes were taken, petitioner's agent went through the plant and found it running. Whatever suspicion as to the vendee's condition in May, 1913, the delay in payment may have aroused, the record discloses no basis whatsoever for a finding that petitioner knew, believed, or even suspected that the financial statements of November and February were fraudulent.

[1] Assuming that the note was presented for payment after a knowledge of the fraud had been obtained (an assumption not clearly supported by the evidence), did this amount to an election? Petitioner's president and attorney were endeavoring to learn what they could. For this purpose they called at the bank; the bank would not and could not rightfully pay the note after the petition in bankruptcy had been filed; the note was not even due. The parties knew these facts; they knew that a presentation for payment must be utterly ineffectual, except as offering a method of obtaining further information. It cannot, therefore, fairly be said to evidence even the slightest intention of waiving the fraud and relying on the contractual obligation.

[2] While Meese's act, if authorized, might be deemed some evidence of a waiver, it is unnecessary for us to consider whether the filing of such a petition, the prayer of which was denied by the court, would be a binding election. First National Bank v. Barse Com'n Co., 198 Ill. 232, 64 N. E. 1097. Petitioner was a creditor for nearly $500 on the open account; as such, it had a right to join in the petition to set aside the order of sale. That it was therein described as a creditor for $10,000, instead of $500, was clearly an error on the part of the attorney, susceptible of explanation, especially as it was not relied upon by any one, and was totally ineffective in inducing any action by the court. Moreover, the petitioner, as owner of the property obtained by fraud, had even a better standing than a creditor to have the order of sale set aside; the allegation that it was a creditor, instead of a defrauded vendor endeavoring to reclaim the goods, was, in this aspect, too, an immaterial error upon which no one relied.

[3] We do not, however, rest our conclusion on these grounds, for, in addition thereto, there was a total lack of authority in Meese to sign petitioner's name as a creditor. He had been directed to reclaim the goods on hand, not to file a general claim as creditor, or to represent petitioner as a creditor in any part of the proceedings. His authority was limited; the acts of an attorney beyond the scope of his authority are without effect upon the client, except in so far as the court or third parties, relying upon the apparent or presumptive authority, may have acted thereon. The unauthorized position taken by

Meese could not evidence an election by petitioner, except by estoppel, and every element of estoppel is lacking.

While a rescission because of fraud must be made promptly after the discovery thereof, the time element is of little importance when bankruptcy precedes the discovery. No one but the claimant can be injured by the delay. Here, however, the petition was filed on the day set for the first meeting of creditors, six weeks after the bankruptcy proceedings had been begun, with sufficient promptness for all purposes.

[4, 5] One further question must be considered. On April 12, 1913, a check for $4,690 was sent. This paid in full for all motors delivered before April 1st and left $1,460 to be applied on the account for motors shipped thereafter. If all the motors which petitioner had the right to reclaim had been on hand, repayment of the $1,460 would have been a condition precedent to their return. But a large number had been sold by the bankrupt; petitioner would be entitled to the proceeds thereof, if it could trace them; if not, it becomes a general creditor therefor, not under the contract as vendor, but on a quasi contractual obligation arising from the fraudulent misappropriation of the petitioner's property. As against this claim, the bankrupt would have a set-off for the moneys paid and credited, not as against any specific motors, but on general account. Inasmuch as the claim greatly exceeds the payment, the balance, after allowing the set-off, is in favor of the petitioner. That it is now too late to file the claim in no manner affects the right of petitioner to retain the $1,460 on account thereof. The situation presents no question of the application of payments to one of several classes of debts. Neither the trustee nor the bankrupt could require the vendor to hold moneys paid on general account as a partial payment on account of motors, which, because of the fraud, the vendor could treat as never having been sold. It follows, therefore, that the special master erred in deducting this amount from the $3,800 allowed by him to the petitioner.

The order of the District Court denying the prayer of the petitioner will therefore be reversed, and the cause remanded, with directions to enter an order in accordance with the stipulation for the payment to the petitioner of the sum of $3,800, together with its costs.